IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SGT. DIANE E. MOSS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| COLONEL L. AARON CHAFFINCH, | :   C.A. No. |
| individually; COLONEL THOMAS F. | : |
| MACLEISH, in his official capacity | : |
| as the Superintendent, Delaware | : |
| State Police; and DIVISION OF | :   JURY TRIAL DEMANDED |
| STATE POLICE, DEPARTMENT OF SAFETY | : |
| AND HOMELAND SECURITY, STATE OF | : |
| DELAWARE, | : |
| | : |
| Defendants. | : |

**COMPLAINT**

1.  This is a civil action to remedy intentional and purposeful race and gender discrimination by the Delaware State Police which proximately lead to the failure to promote plaintiff twice to the rank of Lieutenant. Plaintiff seeks detailed judicial inquiry under intermediate or strict scrutiny analysis to insure that her personal right to equal protection of the laws is upheld, that discrimination odious to our nation's principles of equality is halted and an award of compensatory and punitive damages and injunctive relief because of invidious race and gender discrimination against her. Plaintiff twice was passed over for promotion to the rank of Lieutenant in the Delaware State Police because she is an African-American woman and those

promotions were given instead to less qualified white males. Plaintiff has direct and circumstantial evidence that animosity towards women and African-Americans was the reason defendant Chaffinch twice refused to promote her.

### I. **JURISDICTION**

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202, and the Fourteenth Amendment to the U.S. Constitution. The causes of action arise under 42 U.S.C. §§ 1981 and 1983. The claim arose in this judicial district.

### II. **THE PARTIES**

3. Plaintiff is a citizen of the United States and a resident of New Castle County Delaware. She is an African-American female and the first African-American female ever promoted to the rank of Sergeant in the history of the State Police.

4. Defendant Colonel L. Aaron Chaffinch is the former Superintendent of the Delaware State Police who retired in May 2005. He is sued individually.

5. Defendant Thomas F. MacLeish is currently the Superintendent of the Delaware state Police. He is sued in his official capacity.

6. Defendant Division of State Police, Department of Safety and Homeland Security, State of Delaware ("State Police") is an

agency of the State of Delaware, which is only joined in this action for purposes of collecting attorneys' fees and costs.

### III. FACTS GIVING RISE TO THE ACTION

#### A. PLAINTIFF'S QUALIFICATIONS

7. Plaintiff is a 19 year veteran of the State Police. She currently holds the rank of Sergeant and is on terminal leave leading up to her retirement on March 7, 2006.

8. Plaintiff holds a 1999 Master of Science degree from Wilmington College in Community Counseling having graduated *cum laude* with a GPA of 3.67. She also received a BA degree *cum laude* in Behavioral Science from that institution in 1995. She is a licensed professional mental health counselor (2005) and a national certified counselor (2001). Since May 2001 she has served as an adjunct Professor at Springfield College, Wilmington, DE, having developed and taught several courses in crime and juvenile justice.

9. Plaintiff received the Exceptional Performance Award from the State Police in April 1995, for her undercover drug work, and the Life Saving Award on April 25, 2003. She also received the Superintendent's Citation in September 1988.

10. Plaintiff has held the following positions with the State Police:

- Troop 2, Youth Aid Division ("YAD")/ School Resources Officer ("SRO"), supervising eight troopers. 2003 –

present.

- Troop 2, SRO and supervisor over eight to 14 troopers. 1999-2002.
- Troop 2, Gang Resistance Education Training Unit, supervising one trooper. 1998.
- Promoted to Sergeant May 28, 1998.
- Promoted to Senior Corporal March 7, 1997.
- Troop 2, SRO. 1996.
- Troop 2, YAD. 1994-1996.
- Promoted to Corporal March 2, 1993.
- Special Investigation Unit. 1993.
- Electronic Surveillance Unit. 1990-1993.
- Special Investigation Unit. 1989.
- Troop 9, Road Trooper. 1986-1989,
- Recruit Trooper. March 7, 1986.

    B. **DIRECT AND INDIRECT EVIDENCE OF DISCRIMINATION**

11. The direct and indirect evidence of race and gender discrimination by Chaffinch, which occurred during his employment by the State Police, includes the following.

    A. Throughout his career Chaffinch repeatedly demonstrated his dislike for African-Americans.

    1. He repeatedly mocked an African-American Ministers Organization.

    2. He mocked an African-American rape victim.

    3. He mocked an African-American male trooper and calls him "loves watermelon," reflecting a racial stereotype.

    4. He used that same stereotype in front of the African-American teenage daughter of another African-American trooper.

    5. He mocked an African-American woman, calling her "Aunt Jemimah" in a public gathering.

B. Chaffinch also admits he belongs to a private membership organization which denies membership to women and African-Americans, groups with which he refuses to associate.

C. Chaffinch also, in a racially offensive dialect, admittedly publically recited a long gender stereotypical song or poem which indicates that all the problems of society are the fault of the Biblical person "Eve," and that it is men, symbolized by "Adam," who have to bear the penalty for women's mistakes.

D. Chaffinch also told jokes all the time. But from 50% to 70% of the time his jokes were inappropriate or demeaning to some group, be it African-Americans or women.

E. Chaffinch verbally stated more than once that he does

      not believe that females in general should even serve as troopers.

F.    While on duty, Chaffinch told people that "women are nothing but trouble" and "women are a pain in the ass."

G.    Chaffinch also voiced the sexual stereotype that two women cannot work together in the same office.

H.    Chaffinch also allowed another trooper, in his presence and when he had operational authority over the trooper, to disrespect a female captain by applying the nickname "Puss" to her.

I.    Chaffinch also publically referred to that same female Captain by the offensive stereotypical nickname "Puss."

J.    He also called that female captain "a bitch."

K.    Chaffinch allowed other troopers in the headquarters complex to disrespect that female captain, and to direct wolf whistles towards her.

L.    He also himself disrespected the first female captain in

    the Division and gave the male nickname "Norman" to her, publically applying the name of a most wanted fugitive to her.

M.   Chaffinch even asked a female officer private details of her sex life.

N.   Chaffinch also recited from memory, both on and off duty, five gender based and patently offensive sexually charged limericks which reveal a demeaning attitude towards women by Chaffinch.

O.   Chaffinch admits that he was officially disciplined as a major for telling a sexually explicit joke about masturbation in a co-ed sensitivity training session.

P.   Chaffinch also was forewarned that he would be held accountable for his off duty conduct when he was disciplined earlier in his career for being the senior officer present when a female trooper disrobed and removed her blouse while dancing on a table at a party.

Q.   Chaffinch also publically and in mixed company used a nickname for his penis and bragged that he has

"something extra," referring to his penis. He also admits that earlier in his career he publically named the patrol shift which he headed the "cocksters."

R. When Chaffinch was the commander of Troop 5, he installed mirrors in his office and in the bathroom so he could watch himself masturbate.

S. Chaffinch publically nicknamed a female employee of the Office of Highway Safety "Trish the Dish," meaning "Trish the delicacy."

T. Chaffinch also commented publically on various women in the headquarters building, stating "oohh she tears me up" or he "would love to do her."

U. Chaffinch publically discussed how he would like to watch a female trooper masturbate for a male trooper.

V. Chaffinch also referred publically to another secretary in headquarters as "Lemon titties," referring to her breast size.

W. Reflecting his opinion of female officers, Chaffinch

-8-

    also diminished the operational authority of a female captain in various areas after he became Colonel.

X.    Chaffinch also made it his mission to remove the first and only female troop commander that the State Police has ever had. In doing this, he ignored the advice of his entire Executive Staff who warned him that "it was not best for the organization" to remove her.

Y.    During his command of the Division, Chaffinch never assigned a female to command a troop.

Z.    The two promotions at issue were procedurally irregular. Governor Minner and her agent, State Director of Personnel Lisa Blunt-Bradley, in December 2001 imposed mandatory procedural requirements on all DSP promotions. Defendant Chaffinch defied these obligations which are designed to ensure procedural regularity in the process.

AA.    Numerous instances of Chaffinch's misconduct violate written Policies, Standing Orders and training by the DSP and such conduct by Chaffinch was impermissible both on and off duty. As present Col. MacLeish has testified under oath, police officers are "expected

to conform to a higher standard of conduct than an ordinary citizen is expected to." Troopers "should conduct [their] private life above reproach," and regardless of whether they are on or off duty, they are to conduct themselves in a manner which will reflect favorably on the DSP.

### C. CHAFFINCH PROMOTES TWO LESS QUALIFIED MALES

12. As a result of testing for promotion to the rank of lieutenant in the State Police, which occurred in September of 2001, plaintiff was placed on "C" Band on a promotion list which expired in November 2004.

13. With her on "C" Band were nine other white males, one African-American male, one white female and plaintiff.

14. During the term of this promotions list all the candidates on Bands "A" and "B" were promoted.

15. Two vacancies existed for promotion to lieutenant.

16. Two promotions then were made from Band C during October of 2003.

17. Plaintiff was qualified for and applied for these two promotions.

18. Chaffinch then promoted two less qualified white males: Sergeants Charles Curtis Brown and Michael I. Eisenhardt.

19. Plaintiff was denied these promotions because of her

race and gender.

### D. DAMAGES

20. As a direct and proximate result of the actions of the defendants as detailed herein, plaintiff will suffer lost wages, earnings and benefits, she will suffer diminished earning capacity and receive less pension and other benefits now and upon her retirement, decreased employment and earnings opportunities, and other pecuniary losses, emotional pain, suffering, disappointment, anger, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain, anguish, humiliation, embarrassment, injury to reputation, and other non-pecuniary losses and injury.

### IV. ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT

21. The individual defendant's actions violated clearly established federal constitutional rights of which any official would have known, including decades of Third Circuit case law prohibiting race or gender discrimination against public employees.

22. At all times material hereto the individual defendant participated in, authorized, and sanctioned the federal constitutional deprivations described above.

23. At all times material hereto the individual defendant and his agents were acting under color of law. The federal constitutional deprivations described herein are fairly

attributable to the State.

24. The actions of the defendants and their agents or employees were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federal constitutional rights and because of the exercise of those rights.

25. The defendants either knew or showed a negligent or reckless disregard for the matter of whether their conduct violated federal constitutional rights.

26. Their actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them.

27. Their actions were wanton and malicious or taken with reckless indifference to federal constitutional rights.

28. The exercise of rights under the U.S. Constitution made a difference in all actions adverse to plaintiff.

29. The exercise of these rights was a motivating, substantial or determinative factor in all actions adverse to plaintiff.

30. The defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

31. The defendants' actions were motivated by bias, bad faith, and improper motive.

32. The defendants' actions constitute an abuse of governmental power.

33. The defendants' actions do not further any narrowly drawn important, substantial or compelling governmental interest.

34. The defendants' actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

### COUNT I (PROMOTIONS)

35. Plaintiff repeats and realleges paragraphs 1 - 34 set out above.

### A.    DIRECT EVIDENCE ANALYSIS

36. Plaintiff has provided direct evidence of race and gender discrimination against her.  These statements or other evidence reflect a discriminatory bias against African-American female employees. They provide direct evidence that the decisionmaker placed substantial negative reliance on an illegitimate criterion in reaching the challenged decision.

37. Alternatively, impermissible racial and gender based factors, as well as permissible factors, were considered in the decision making process.

38. Plaintiff is within a protected racial and gender group, that is, she is an African-American female.

39. She was not promoted on two occasions.

40.  Her race and gender was the motivating, determinative or even the sole reason why she was not promoted.

41.  The defendants cannot prove by a preponderance of the evidence that if they had not used gender based or suspect racial classifications they still would not have promoted plaintiff.

### B.  PRETEXT ANALYSIS

42.  Plaintiff was qualified for promotion to Lieutenant.

43.  At all times material hereto she was a diligent, honest, and loyal employee who always performed her job in an exemplary manner.

44.  Plaintiff sought promotion to Lieutenant.

45.  Two vacancies for promotion to Lieutenant existed.

46.  Plaintiff is an African-American female.

47.  The promotions went to two less qualified white males.

48.  Any legitimate non-discriminatory reason offered by the defendants for their actions is a pretext for intentional and purposeful discrimination based on race and/or gender.  Any reason offered by the defendants is unworthy of credence since plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that

the defendants did not act for the asserted non-discriminatory reason.

49. Alternatively, plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment actions was the gender of the plaintiff.

**(a). CIRCUMSTANTIAL EVIDENCE OF INTENT**

50. The circumstantial and direct evidence of intent, which is identified in paragraph 11 above, proves invidious discriminatory purpose. Other examples include the following.

51. Historically no African-American woman has ever been promoted to the rank of Lieutenant, Captain, Major, Lieutenant Colonel or Colonel of the State Police. Chaffinch continued this historic pattern with the two less qualified males who he promoted to Lieutenant.

52. Approximately 87% of the State Police is white and only 9% is African-American. About 90% of the State Police are males and only 10% are females. Report by Lisa Blunt-Bradley, dated December 1, 2001, at 8, 11.

53. In the Professionals EEO-4 Category, which includes Lieutenants, Captains and Majors, minorities are only 8.8% of the category and females only 5.3% as of October 1, 2001. Bradley Report at 12.

54. Using a workforce analysis, the State Police has been and continues to be under represented in all EEO-4 Categories for minorities. Bradley Report at 13. For example, in the Professionals category the labor market is 14% and the State Police percentage is only 7%. Id.

55. Using a workforce analysis, the State Police also has been and continues to be under represented in all EEO-4 Categories for women. Bradley Report at 13. For example, in the Professionals category the labor market is 55% and the State Police percentage is only 5%. Id.

56. Chaffinch blocked the recommendation of the Bradley Report that a Roundtable of Women in Policing be convened to address issues unique to women in law enforcement in the State Police and strategies to address those issues. Former Lt. Col. Thomas Marcin tried to implement this recommendation but since Marcin's retirement Chaffinch ignored the recommendation. Bradley Report at 47.

57. To insure accountability in the area of the utilization of uniformed women officers in the State Police the Bradley Report recommended that the State Police create a Diversity Committee. Chaffinch blocked the implementation of this recommendation.

59. Given the totality of the circumstances, a reasonable fact-finder could conclude that the defendants intentionally

and purposefully treated plaintiff less favorably than others because of her race and/or gender.

60. Plaintiff has been illegally denied two promotions because of her race and/or gender.

61. Plaintiff's constitutional right to the equal protection of the law and to be free of race and gender discrimination has been denied under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. §§ 1983 and 1981.

**Wherefore**, plaintiff prays that the Court:

I. Enter judgment against the defendants.

II. Enter a declaratory judgment declaring the acts of the defendants to be a violation of plaintiff's constitutional rights.

III. Enter a judgment against the individual defendant for compensatory damages, including lost wages, back pay, pension and other benefits, for future or front pay, loss of earning capacity, emotional distress, humiliation, embarrassment, and injury to reputation.

IV. Enter a judgment against the individual defendant for punitive damages.

V. Issue a reparative injunction directing that upon retirement plaintiff's pension and other

      benefits be calculated as if she had been promoted to the rank of lieutenant.

VI. Issue a reparative injunction directing that the individual defendants place a signed document in plaintiff's personnel file indicating that she was qualified to be promoted to the rank of lieutenant, that but for illegal conduct by the defendants she would have been promoted to that rank, and apologizing to plaintiff for violating her constitutional rights,

VII. Award plaintiff attorney's fees, costs and pre and post judgment interest for this action.

VIII. Require such other and further relief as the Court deems just and proper under the circumstances.

**THE NEUBERGER FIRM, P.A.**

   /s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQUIRE** (#243)
**STEPHEN J. NEUBERGER, ESQUIRE** (#4444)
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
tsn@neubergerlaw.com
sjn@neubergerlaw.com
Attorneys for Plaintiff

Dated: September 29, 2005